IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SCOTTIE MITCHELL,                    :
    Petitioner,                  :
                                     :
                                     :   CIVIL. ACT. NO.: 14-0574-KD-N
vs.                                  :   CRIMINAL. NO. 12-00299-KD-N
                                     :
UNITED STATES OF AMERICA,            :
    Respondent.                  :
                                     :

REPORT AND RECOMMENDATION

      Scottie Mitchell ("Mitchell"), a federal prisoner proceeding *pro se*, has filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 58)[1] (the "§ 2255 Motion") challenging his sentence in the above-styled criminal action. The United States of America ("Respondent") has timely filed a response in opposition (Doc. 62) to the § 2255 Motion, and Mitchell has filed a reply (Doc. 64) in support of his § 2255 Motion.  The § 2255 Motion is now under submission and is ripe for adjudication.

      This matter has been referred to the undersigned United States Magistrate Judge for entry of a report and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B)-(C), Rule 8(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, and SD ALA LR 72.1(c). Upon consideration, and for the reasons stated herein, it is RECOMMENDED that Mitchell's § 2255 Motion (Doc. 58) be DENIED and that the claims therein be DISMISSED.  It is further RECOMMENDED that Mitchell be found not entitled either to a Certificate of Appealability or to proceed *in forma pauperis*

---

[1]    All "Doc." citations herein refer to the docket of the above-styled criminal action.

on appeal.

**I. Background**.

On July 20, 2011, deputies with the Baldwin County, Alabama Sheriff's Office responded to a report of a suspicious vehicle in the area.  (Doc. 47 at 3).  The deputies located the vehicle at a gas station just off Interstate 10 (I-10).  (*Id*.).  The occupants of the vehicle, Scottie Mitchell and his girlfriend, observed the patrol car and fled eastbound on I-10.  (*Id*.).  The deputies activated their lights and siren and gave chase to Mitchell's vehicle.  In attempt to elude the deputies, the vehicle traveled at speeds in excess of 110 miles per hour and weaved in and out of traffic.  (*Id*.).  The chase ended when Mitchell's vehicle crashed into a ditch at the Florida state line. (*Id*.).  The deputies detained Mitchell, while his girlfriend was taken to the emergency room for injuries sustained. Upon search of the vehicle, the deputies located a bag of marijuana and various stolen items.  A Smith and Wesson model CTG, .38-caliber revolver was found in the woods beside the vehicle.  (*Id*. at 4).  Mitchell was advised his *Miranda* rights and confessed that the items found in his vehicle, including the revolver were stolen from a residence in Baldwin County, Alabama that he and his girlfriend burglarized.  (*Id*.).  Mitchell was found guilty of theft of property in violation of § 13A-7-7 of the Code of Alabama[2] and sentenced pursuant to the Habitual Offender Act after the court found that Mitchell was previously convicted of one prior adult felony, a 1997 third-degree burglary conviction in Pearl River County, Mississippi.  (*Id*. at 10-11).

---

[2]     The charges of second-degree theft of property, possession of pistol by certain forbidden persons, tampering with physical evidence, reckless endangerment, possession of marijuana, and attempting to elude were all dismissed by the Baldwin County Circuit Court in Bay Minette, Alabama.  (Doc. 47 at 10-11).

On August 2, 2011, the case was referred to an Alcohol Tobacco and Firearms specialist for possible federal firearms violations.  (*Id.* at 4).  It was determined that the Smith and Wesson revolver recovered from the search of Mitchell's vehicle was manufactured outside the state of Alabama, thereby affecting interstate commerce, and Mitchell was indicted on two counts of firearm violations in the Southern District of Alabama on December 27, 2012.  (*Id.*).  Count one charged that on or about July 20, 2011, Mitchell having been convicted of a crime punishable by imprisonment for a term exceeding one year (that being commercial burglary on November 26, 1997, in the Circuit Court of Pearl River County, Mississippi) did knowingly possess, in and affecting commerce, a firearm in violation of 18 U.S.C. § 922(g)(1).  (Doc. 1 at 1).  Count two charged that on or about July 20, 2011, Mitchell did receive, possess, conceal, store, barter, sell and dispose of a stolen firearm, which Mitchell knew and had reasonable cause to believe had been stolen and which had been previously shipped and transported in interstate commerce, in violation of 18 U.S.C. § 922(j).  (*Id.*).  On February 13, 2013, a federal warrant was issued for Mitchell's arrest.  (Doc. 4).

However, in the time between the July 20, 2011, Baldwin County offense and the federal firearm offense subject of this petition, Mitchell accrued four other criminal charges:

1.   On November 1, 2011, in Baldwin County, Alabama, Mitchell was charged with and found guilty of third-degree assault.  He was sentenced on December 15, 2011.  (Doc. 47 at 11)

2.   On December 7, 2011, in Baldwin County, Alabama, Mitchell was charged with and found guilty of third-degree burglary.  He was sentenced on February 16, 2012.  (*Id.*).

3.      On February 24, 2012, in Houma, Louisiana, Mitchell was charged with and found guilty of theft over $1,500.  He was sentenced on May 24, 2012.  (*Id*. at 12).

4.      On February 24, 2012, in Houma, Louisiana, Mitchell was charged with and pled guilty to the unauthorized use of an access card.  He was sentenced on May 24, 2012.  (*Id*.).

Consequently, at the time the federal arrest warrant was issued for Mitchell, he was imprisoned in the State of Louisiana on the above-mentioned February 24, 2014 charges. The Southern District of Alabama petitioned for writ of habeas corpus *ad prosequendum,* which was granted, and the Louisiana Department of Corrections released Mitchell into federal custody on May 23, 2013, to face firearm charges.  (Docs. 20-22).

On July 30, 2013, Mitchell pleaded guilty to count one of the indictment pursuant to a written plea agreement, and he executed a "Factual Resume," in which he admits the factual basis for his conviction.  (Doc. 40).  A Presentence Investigation Report ("PSI report") was prepared by the probation office.  The PSI report utilized the 2012 Guidelines Manual to determine Mitchell's Offense Level for violation of 18 U.S.C. § 922(g)(1).  (Doc. 47 at 5; *see also* U.S.S.G. § 2K2.1).  Based on U.S.S.G. § 2K2.1(b)(4)(A), two levels were added to Mitchell's base offense level because the offense involved a stolen firearm and four levels were added, pursuant to U.S.S.G. § 2K2.1(b)(6)(B), because Mitchell possessed the firearm in connection with another felony offense, the July 20, 2011 burglary charge.  (Doc. 47 at 5).  An additional two levels were added because Mitchell recklessly created a substantial risk of death or seriously bodily injury to another person in the course of fleeing from a law enforcement officer.  (*Id*.; *see also* U.S.S.G. § 3C1.2).  The PSI reported an adjusted offense level of

28 for Mitchell. (Doc. 47 at 5). However, due to Mitchell's acceptance of responsibility and timely plea of guilty, Mitchell's total offense level was decreased to 25. (Doc. 47 at 6). The PSI calculation of Mitchell's criminal history points was 20, placing him in Category VI for sentencing purposes;[3] this included a two-point increase due to the fact that Mitchell was on probation on July 20, 2011 when he committed the offense in question. (Doc. 47 at 9-10, 12; *see also* U.S.S.G. § 4A1.1(d)).

Based upon Mitchell's total offense level of 25 and criminal history category of VI, the advisory guideline imprisonment range was 110 to 137 months, and the statutory provision of Mitchell's offense, § 922(g)(1), provided a maximum term of imprisonment of 10 years. (Doc. 47 at 17). Therefore, the sentencing guideline range for Mitchell was 110 months to 120 months, and the government recommended sentencing Mitchell at the low end of the range. (*Id*.). The Court followed the government's recommendation and imposed a 110-month sentence of imprisonment on December 11, 2013.[4] (Doc. 52).

On December 5, 2014, Mitchell filed *pro se* the present § 2255 motion challenging the effectiveness of his counsel's failure to object to certain PSI enhancements that increased the length of his imprisonment sentence, and Mitchell seeks

---

[3]     Mitchell has a long history of assorted criminal charges dating back to 1996, when he was 18 years of age and was found guilty of commercial burglary and sentenced to five years imprisonment, which was suspended for 5 years probation but was ultimately revoked. (Doc. 47 at 6). The review of Mitchell's criminal history shows the judicial and prison systems to be a revolving door for Mitchell as he exhibits a clear pattern of recidivism his entire adult life. (*See id*. at 6-14).

[4]     Mitchell was given credit by the Court for time previously served prior to his sentencing. This included credit for the 7 months he served in Baldwin County, Alabama on the July 20, 2011 burglary charge and 6 months he served on the writ in the Southern District of Alabama on the instant firearms offense. These previous 13 months of custody were deducted from his 110-month sentence leaving him a term of 97 months to serve in the custody of the United States Bureau of Prisons. (Doc. 52 at 2).

enforcement of the Court's recommendation to the Bureau of Prisons to run his state and

federal imprisonment sentences concurrent. (Doc. 58).[5]

## II. Applicable Law

### A. General Standards Under § 2255

Title 28 U.S.C. § 2255 "permits a federal prisoner to bring a collateral challenge

by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-*

*Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014). Section 2255 provides:

> A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the
> sentence was imposed in violation of the Constitution or laws of the
> United States, or that the court was without jurisdiction to impose such
> sentence, or that the sentence was in excess of the maximum authorized by
> law, or is otherwise subject to collateral attack, may move the court which
> imposed the sentence to vacate, set aside or correct the sentence ... If the
> court finds that the judgment was rendered without jurisdiction, or that the
> sentence imposed was not authorized by law or otherwise open to
> collateral attack, or that there has been such a denial or infringement of the
> constitutional rights of the prisoner as to render the judgment vulnerable to
> collateral attack, the court shall vacate and set the judgment aside and
> shall discharge the prisoner or resentence him or grant a new trial or
> correct the sentence as may appear appropriate.

28 U.S.C. § 2255(a)-(b).

"Once the defendant's chance to appeal has been waived or exhausted," a court is

"entitled to presume he stands fairly and finally convicted, especially when, as here, he

---

[5]     Subsequent to filing the current petition, Mitchell moved, in his "Motion for
Credit for Time Served in Pursuant to such Nunc Pro Tunc", for the Court to order the
Federal Bureau of Prisons to grant him credit for the time he served in federal custody
from July 20, 2011, prior to his current federal conviction and sentence.  (Doc. 59).  The
Court dismissed the motion for lack of jurisdiction and informed Mitchell that the proper
venue for such motion was in the district court of the district in which he was
incarcerated.  (Doc. 60 at 1) (citing *Fernandez v. United States*, 941 F.2d 1488, 1495
(11th Cir. 1991)).

already has had a fair opportunity to present his federal claims to a federal forum."

*United States v. Frady*, 456 U.S. 152, 164, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).

"[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct

appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citing

*Frady*, 456 U.S. at 165 (collecting cases)).  "Because collateral review is not a substitute

for a direct appeal, the general rules have developed that: (1) a defendant must assert all

available claims on direct appeal, and (2) relief under 28 U.S.C. § 2255 is reserved for

transgressions of constitutional rights and for that narrow compass of other injury that

could not have been raised in direct appeal and would, if condoned, result in a complete

miscarriage of justice.  Accordingly, a nonconstitutional error that may justify reversal on

direct appeal does not generally support a collateral attack on a final judgment unless the

error (1) could not have been raised on direct appeal and (2) would, if condoned, result in

a complete miscarriage of justice."  *Id*. at 1232-33 (internal citations, quotations, and

footnote omitted).   Generally, if a challenge to a conviction or sentence is not made on

direct appeal, it will be procedurally barred in a § 2255 challenge.  *Mills v. United States*,

36 F.3d 1052, 1055 (11th Cir. 1994).

> A defendant can avoid a procedural bar only by establishing one of the
> two exceptions to the procedural default rule.  Under the first exception, a
> defendant must show cause for not raising the claim of error on direct
> appeal and actual prejudice from the alleged error.  *Bousley v. United
> States*, 523 U.S. 614, 622, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828
> (1998); *Mills*, 36 F.3d at 1055; *Cross v. United States*, 893 F.2d 1287,
> 1289 (11th Cir. 1990); *Greene*, 880 F.2d at 1305; *Martorana v. United
> States*, 873 F.2d 283, 284 (11th Cir. 1989); *Parks v. United States*, 832
> F.2d 1244, 1246 (11th Cir. 1987). Under the second exception, a court
> may allow a defendant to proceed with a § 2255 motion despite his failure
> to show cause for procedural default if "'a constitutional violation has
> probably resulted in the conviction of one who is actually innocent.'"
> Mills, 36 F.3d at 1055 (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106

7

S. Ct. 2639, 2649, 91 L. Ed. 2d 397 (1986)); *see also Bousley*, 523 U.S. at 622, 118 S. Ct. at 1611; *Jones*, 153 F.3d at 1307.

*Id.* at 1234-35 (footnote omitted).  However, claims of ineffective assistance of counsel fall outside the procedural default rule and, in most cases are properly raised for the first time in a habeas petition.  *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).  To establish ineffective assistance of counsel, a petitioner "must show that his attorney's performance was deficient and that the deficiency was prejudicial." *Id.*  However, "[c]onclusory allegations of ineffective assistance are insufficient" *Wilson v. U.S.*, 962 F.2d 996, 998 (11th Cir. 1992) (quoting U.S. v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991)).  Furthermore, "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance." *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994).

### B.  Ineffective Assistance of Counsel

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  "To establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-88, 694).  "'Conclusory allegations of ineffective assistance are insufficient.'" *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (quoting *United States v. Lawson*, 947 F.2d 849,

853 (7th Cir. 1991)).  "Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa."  *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted).  *See also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both Strickland prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one.").

In evaluating the first, or "performance," prong of *Strickland*, "[j]udicial scrutiny of counsel's performance must be highly deferential."  *Strickland,* 466 U.S. at 689. Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that ... the challenged action might be considered sound trial strategy."  *Id*. (internal quotations omitted).  A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they "were outside the wide range of professionally competent assistance."  *Id*. at 690.  Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption in favor of competence," we have held that in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take."  *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

> Under the second, or "prejudice," prong of *Strickland*, a petitioner must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." 466 U.S. at 693, 104 S. Ct. at 2067. This requires a showing of more than "some conceivable effect on the outcome of the proceeding." *Id*. Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694, 104 S. Ct. at 2068. Although this standard is difficult to meet, it is significant that a petitioner must show only a reasonable probability that the outcome would have been different; he "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id*. at 693, 104 S. Ct. at 2068. When evaluating this probability, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id*. at 695, 104 S. Ct. at 2069.

*Brownlee v. Haley*, 306 F.3d 1043, 1059-60 (11th Cir. 2002).

"[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003). Indeed, "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Id*. at 504. *See also United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("An ineffective assistance claim should usually be raised in a motion under 28 U.S.C. § 2255." (citing *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010))), *cert. denied*, 134 S. Ct. 962, 187 L. Ed. 2d 822 (2014).

## III. Analysis

### A. Ineffective Assistance of Counsel.

Mitchell claims his counsel was ineffective by failing to object to erroneous PSI Report information, namely, post-offense criminal charges and enhancement points for obstruction of justice, possession of firearm in connection with another felony, and

committing the offense while on probation, which led to the imposition of a lengthier prison sentence than he deserved.  "An error in the district court's calculation of the Sentencing Guidelines range warrants vacating the sentence, unless the error is harmless." *United States v. Barner*, 572 F.3d 1239, 1247 (11th Cir. 2009).  If the error is harmless, a court need only inquire whether the sentence is reasonable.  *See United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006).

### 1.  Calculation of Offenses for Criminal History.

First, Mitchell claims that his attorney was ineffective for failing to object to the inclusion of post-offense charges and convictions in calculating his criminal history category.  Mitchell contends the state court convictions of December 15, 2011, for assault, and May 24, 2012, for theft and unauthorized use of an access card, were *subsequent* (in time) convictions to his federal firearms offense and, therefore, cannot be considered *prior* criminal conduct for purposes of calculating his criminal history category under the sentencing guidelines.[6]  Mitchell's claim, however, lacks merit.

The following directives apply as to calculating one's criminal history category:

(a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.

---

[6]     Pursuant to § 4A1.1(c), Mitchell's Presentence Investigation Report (PSI) added one point for Mitchell's December 2011 conviction in an Alabama circuit court for third-degree assault, which resulted in a sentence of 180 days custody, split to serve 34 days, balance suspended for 12 months probation and a fine and court costs.  Pursuant to 4A1.1(a), Mitchell's PSI added three points for Mitchell's May 2012 conviction in a Louisiana state court for theft over $1,5000, which resulted in a sentence of five years custody, to run concurrently with the associated charge of unauthorized use of an access card.

(b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).

(c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.

...

U.S.S.G. § 4A1.1.  Coupled with § 4A1.1 in determining an offender's criminal history is § 4A1.2, the definitions and instructions for §4A1.1; therefore, sections 4A1.1 and 4A1.2 must be read together.  *See* U.S.S.G. § 4A1.1 commentary.

The Court need only look to § 4A1.2(a)(1) to determine the merit of Mitchell's claim; it defines a "prior sentence" as "any sentence previously imposed upon adjudication of guilt." U.S.S.G. § 4A1.2(a)(1).  Moreover, the commentary for section 4A1.2 is dispositive of Mitchell's issue, stating: "'Prior sentence' means a sentence imposed prior to sentencing on the instant offense, other than conduct that is part of the instant offense. . . . A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense."  U.S.S.G. § 4A1.2 commentary note 1.  Thus, the guidelines fully support the consideration of Mitchell's state court sentences, occurring prior to his federal firearms sentence, in determining his criminal history category.[7]  *See also United States v. Walker*, 912 F.2d 1365, 1366-1367 (11th Cir. 1990) (concluded the sentencing court should consider sentences imposed before the time of sentencing rather than before the time of the federal offense), *cert.*

---

[7]       "Sentencing Guidelines commentary explaining or interpreting the Guidelines is 'authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'" *United States v. Cortes—Salazar*, 682 F.3d 953, 954 (11th Cir. 2012) (quoting *Stinson v. United States*, 508 U.S. 36, 38, 113 S. Ct. 1913, 1915, 123 L.Ed.2d 598 (1993)).

*denied*, 498 U.S. 1103 (1991); *United States v. Merchan*, 446 F. App'x 160, 161 (11th Cir. Fla. 2011) (same), *cert. denied*, 527 U.S. 1029 (1999); *United States v. Luna*, 165 F.3d 316, 325 (5th Cir.) (same), *cert. denied*, 526 U.S. 1126 (1999); *United States v. Pugh*, 332 U.S. App. D.C. 402 (D.C. Cir. 1998) (same), *cert. denied*, 526 U.S. 1125 (1999); *United States v. Smith*, 900 F.2d 1442 (10th Cir. 1990) (determining state sentences imposed for crimes committed after the date of the defendant's federal offense of conviction but before the imposition of his sentence for that offense should be taken into account in arriving at the defendant's criminal history category); *United States v. Tabaka,* 982 F.2d 100, 101-02 (3d Cir. 1992) (same); *United States v. Beddow*, 957 F.2d 1330, 1337 (6th Cir. 1992) (same); *United States v. Hoy*, 932 F.2d 1343, 1345 (9th Cir. 1991) (same); *United States v. De Jesus Mesa Lopez*, 349 F.3d 39 (2d Cir. 2003) (sentence was enhanced due to conviction and sentence made in state court before current federal conviction, despite that federal conviction dealt with crimes that occurred before state crimes); *United States v. Bonilla-Martinez*, No. 92-2357, No. 93-1517, 1993 U.S. Dist. App. LEXIS 29441 (1st Cir. Nov. 12, 1993) (same); *United States v. Freeman*, Nos. 91-5299, 91-5300, 1991 U.S. App. LEXIS 21188 (4th Cir. Sept. 10, 1991) (same).[8]

---

[8]      The Eleventh Circuit has used this same reasoning with how to treat the similar issue of post-plea offenses.  *See United States v. Fayette*, 895 F.2d 1375 (11th Cir. 1990). In *Fayette*, the Court stated that "post-plea offenses, no less than offenses which occur prior to the entry of a plea, implicate the concerns which led to the creation of a criminal history category with guided departure provisions. . . . Post-plea offenses, like pre-plea offenses, involve additional criminal activity by the defendant. Moreover, both . . . occur prior to sentencing and the entry of final judgment . . ., [and both] make a defendant more culpable and suggest the likelihood of recidivism and future criminal behavior.  *Fayett*, 895 F.2d at 1380; *see also United States v. Laihben*, 167 F.3d 1364, 1365-66 (11th Cir. 1999) (concluding that, in calculating the defendant's guidelines range, it was proper to include a conviction that occurred after the commission of, but before sentencing on, his current offense).

With Mitchell's claim completely lacking merit when paired with the definitions and commentary to the sentencing guidelines, as well as abundant case law, the Court determines that counsel's representation was not unreasonable in failing to object to the PSI report's inclusion of arrests occurring after Mitchell's federal offense but prior to his federal indictment and conviction. Additionally, Mitchell suffered no prejudice due to his counsel's failure to object to the same, as had counsel objected, the proceeding would have been the same. *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam); *see also United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir.2000) ("[C]ounsel is not ineffective for failing to raise claims reasonably considered to be without merit."). Therefore, Mitchell's claim lacks merit, and the undersigned recommends that this claim be dismissed with prejudice.

### 2. Enhancements to Offense.

Second, Mitchell asserts three ineffective assistance claims regarding his counsel's failure to object to enhancements to his PSI report. Mitchell claims that these enhancements significantly increased his criminal history points and his Offense Level, placing him in Offense Level 25 and Category IV, causing him to receive a lengthier prison sentence than deserved.

The sentencing guide for Mitchell's § 922(g)(1) offense establishes a base offense level of 20 if, "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A). The government subsequently enhanced the offense level of Mitchell's federal charge based on factual details of the offense from

which the firearms charge was born, the July 20, 2011 burglary, and it is these

enhancements Mitchell challenges.  Notably, Mitchell does not question the validity of

the facts used by the government to enhance his sentence; rather, he posits that he should

not have received enhancements for the conduct.  To be successful on his claims,

Mitchell must show that his counsel's failure to object to said enhancements: (1) 'fell

below an objective standard of reasonableness' and (2) that such failure prejudiced him in

that 'there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different.'"  *United States v. Pease*, 240 F.3d

938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-88, 694).

### a. Two Point Enhancement to Offense Level for Obstruction of Justice.

The government increased Mitchell's offense level, pursuant to §3C1.2, due to his

reckless endangerment to others caused by the car chase on July 20, 2011, when Mitchell

attempted to elude deputies after the burglary.  Section 3C1.2 states:

> If the defendant recklessly created a substantial risk of death or serious
> bodily injury to another person in the course of fleeing from a law
> enforcement officer, increase by 2 levels.

Mitchell maintains, however, that the federal firearm offense "and the flight [from

deputies following the burglary] was too attenuated to support application of U.S.S.G. §

3C1.2" (Doc. 64 at 5) and that his counsel was ineffective by failing to object to the

enhancement received for such conduct.  (Doc. 47 at 5).  A simple review of the record,

however, negates Mitchell's claim.

Mitchell admits in his Factual Resume executed as part of his plea agreement that

on July 20, 2011, Mitchell fled by vehicle from a deputy; he drove at accelerated speeds

on the interstate, passed cars in the left lane and on the emergency lane, and ultimately

crashed the vehicle into a guardrail.  (Doc. 40 at 11).  He further admits that the pistol

retrieved during the search of the car was procured from the recent burglary.  (*Id*.).

Based on the admitted to facts above, the Court finds that the July 20, 2011

burglary and car chase are directly linked and applicable to the instant offense;

admittedly, it is how Mitchell obtained the pistol subject to the instant offense.

Consequently, the flight from the sheriff's deputies is directly connected to Mitchell's

federal firearms charge, and the plain language of §3C1.2 establishes Mitchell's conduct

on July 20, 2011, is relevant to and encompassed in the instant offense.  Therefore, the

Court finds no error in the PSI report or sentencing calculations, and Mitchell has failed

to carry his burden of establishing any of the *Strickland* standards of ineffective counsel.

*See Strickland*, 466 U.S. at 687-88, 694; *see also Chandler v. Moore*, 240 F.3d 907, 917

(11th Cir.2001) (declaring that defendant's counsel was not ineffective for failing to raise

a nonmeritorious issue).  As such, the Court recommends that Mitchell's claim be

dismissed with prejudice.

**b.  Four Level Enhancement to Offense Level for Possessing Firearm in Connection with another Felony.**

Mitchell next claims he received ineffective assistance of counsel when his

counsel failed to object to the government's four level increase to his offense level for

use or possession of the firearm in connection with another felony offense, notably, the

July 20, 2011 burglary.  (Doc. 47 at 5).  According to U.S.S.G § 2K2.1(b)(6)(B), if the

defendant "used or possessed any firearm or ammunition in connection with another

felony offense; or possessed or transferred any firearm or ammunition with knowledge,

intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels."

As discussed above, the instant offense was borne out of a burglary, to which Mitchell confessed and pleaded guilty. (Doc. 47 at 3-4, 10-11; Doc. 40 at 11). The record is clear, a pistol was found in Mitchell's possession following a high speed car chase in attempt to elude police. After arrest, Mitchell admitted to the burglary and it was proven that the pistol was stolen property obtained from the burglary. (Doc. 40 at 11; Doc. 47 at 4). Mitchell produces no evidence or argument that the pistol at issue in the instant offense was not his or a product of the burglary. Thus, U.S.S.G § 2K2.1(b)(6)(B) is applicable to the facts of this case, and there is no likelihood that had counsel objected to this enhancement that Mitchell's sentence would have been different. *See Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."). Thus, it is recommended that this claim be dismissed with prejudice.

### c. Two Point Enhancement to Criminal History for Committing Offense while on Probation.

The instructions for computing one's criminal history category for sentencing purposes are found at U.S.S.G. § 4A1.1. The guide states that two (2) points should be added to the calculation "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(d). In the case at hand, the

PSI report added two points to Mitchell's criminal history because Mitchell "committed the instant offense while under a criminal justice sentence for Possession of Stolen Property (case 07-164-PKS) and Uttering Forgery (case 08-197-PKT) in the Circuit Court of Pike County, Mississippi." (Doc. 47 at 12). Mitchell challenges this increase and his attorney's failure to object to it and argues, contrary to the PSI report, he was not on probation at the time of his federal offense.

The PSI report, however, states that Mitchell was on probation from two Pike County, Mississippi charges at the time of the instant offense.[9] (Doc. 47 at 9-10). Most importantly, the PSI specifics that Mitchell was not discharged from supervision on the Pike County charges until August 27, 2011 (*id*.), but was arrested for burglary and eluding law enforcement, the impetus and creator of the instant firearm offense, on July 20, 2011. (*Id*. at 1). Mitchell's blanket statement that he was not on probation at the time the offense occurred will not suffice, as conclusory allegations are insufficient to support federal habeas relief. *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir.1992) ("Conclusory allegations of ineffective assistance are insufficient."); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *United States v. Holmes*, 406 F.3d 337, 361 (5th Cir. 2005) ("mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional claim.") (citing *Green v. Johnson*, 160

---

[9]     The record is scant as to the details surrounding the offenses but establishes that Mitchell was convicted of possession of stolen property on April 24, 2007, in Pike County, Mississippi, and received a sentence of 10 years imprisonment, but earned released supervision on December 26, 2007, with the balance of his sentenced suspended for five years. (Doc. 47 at 9). On February 22, 2008, Mitchell obtained another charge in Pike County, Mississippi, this time for uttering forgery. (*Id*.). His probation for the possession of stolen property charge was revoked on July 28, 2008, and Mitchell was convicted of uttering forgery on September 15, 2008, for which he received another 10-year imprisonment sentence. (*Id*.).

F.3d 1029, 1042 (5th Cir. 1998)).  Mitchell puts forth no evidence or argument to support

his claim; he fails to even suggest an alternate date of discharge of supervision from Pike

County.  Therefore, the claim is insufficient to establish deficient performance or

prejudice and should be denied.

      B.     <u>Bureau of Prisons Computation of Sentence Length.</u>

      Finally, Mitchell claims he is entitled to have his federal sentence run concurrent

to his State of Louisiana Department of Corrections sentence and petitions the Court for

enforcement of the same.  The district court's judgment entered on December 11, 2013,

states, *inter alia*:

> The defendant is hereby committed to the custody of the United States
> Bureau of Prisons to be imprisoned for a total term of NINETY-SEVEN
> (97) MONTHS as to Count 1.  Said term is not a departure, but it gives the
> defendant credit for the 7 months he served in Baldwin County on the
> burglary charge and 6 months custody the defendant has served on the writ
> in the SD/AL on the instant offense, which totals 13 months credit.
>
> The court makes the following recommendations to the Bureau of Prisons:
> The custody sentence is to run concurrently with the state custody
> sentence the defendant is currently serving.  The Court recommends to the
> Bureau of Prisons that the defendant be allowed to participate in
> residential, comprehensive, substance abuse treatment, while incarcerated.

(Doc. 52 at 2) (emphasis omitted).  A review of the judgment and imposition of

Mitchell's sentence reveals that the district court did, in fact, recommend his federal

custody sentence to run concurrent to his undischarged state sentence.  Thus, Mitchell's

claim is not a challenge to the validity of the district court's sentencing, *Antonelli v.

Warden*, U.S.P. Atlanta, 542 F.3d 1348, 1352 (11th Cir.2008) (prisoner may challenge

the validity of his sentence in § 2255 petition), to the language of the imposing sentence,

*U.S. v. Nickson*, 553 F. App'x 866, 869-70 (11th Cir. 2014) (where prisoner "seeks to

change the language imposing the sentence," he invokes § 2255), or to set aside or correct the sentence.  Instead, Mitchell claims the warden of the prison where he is incarcerated denied his request to have his federal sentence run concurrently with his imposed State of Louisiana sentence.  Mitchell petitions the Court to order that the Bureau or Prisons ("BOP") "grant [his federal] charge to run concurrent with time [he] did in LA.  D. O.C." (Doc. 58 at 7).  This claim, therefore, is essentially a challenge to the execution of Mitchell's sentence and is not cognizable pursuant to § 2255.

"[C]hallenges to the execution of a sentence, rather than the validity of the sentence itself, are properly brought under [28 U.S.C. ]§ 2241." *E.g., Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1352 (11th Cir. 2008).  However, "[s]ection 2241 petitions may be brought only in the district court for the district in which the inmate is incarcerated." *Fernandez v. United States*, 941 F.2d 1488, 1495 (11th Cir. 1991).  *Accord, e.g., Vance v. United States*, 476 F. App'x 234 (11th Cir. 2012) ("[T]he district court lacked subject-matter jurisdiction to entertain the petition because '[s]ection 2241 petitions may be brought only in the district court for the district in which the inmate is incarcerated.' *Fernandez v. United States*, 941 F.2d 1488, 1495 (11th Cir. 1991)).  As such, the court lacks jurisdiction over Mitchell's claim because Mitchell is not incarcerated in this district.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 446-47, 124 S. Ct. 2711, 159 L. Ed. 2d 513 (2004) ("The proviso that district courts may issue the writ only 'within their respective jurisdictions' forms an important corollary to the immediate custodian rule in challenges to present physical custody under § 2241. Together they compose a simple rule that has been consistently applied in the lower courts, including in the context of military detentions: Whenever a § 2241 habeas petitioner seeks to

20

challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement."). Accordingly, the Court lacks subject-matter jurisdiction to review these claims, and it is recommended that Mitchell's claim be dismissed without prejudice.

## IV.  Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned **RECOMMENDS** that a Certificate of Appealability be **DENIED** for Mitchell's § 2255 motion.  18 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability.  28 U.S.C. § 2253(c)(1).  A certificate of appealability may only issue where "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

Where the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000).  *See also Miller-El*, 537 U.S. at 336 ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)).).  "When the district court denies a habeas petition

on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

"A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotations omitted).  The undersigned finds that reasonable jurists could not debate whether Mitchell's § 2255 motion to vacate should be resolved in a different manner or that any of the issues presented is adequate to deserve encouragement to proceed further. Insofar as the undersigned has recommended dismissal of certain claims as procedurally barred, the undersigned also finds that jurists of reason would not find such a procedural ruling debatable.  Accordingly, Mitchell is not entitled to a Certificate of Appealability on any of his claims.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by petitioner, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.  *See, e.g., Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 U.S. Dist. LEXIS 54587, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 U.S. Dist. LEXIS 54465, 2011 WL 1930662 (S.D. Ala. May 19, 2011); *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 U.S. Dist. LEXIS 106920, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same

procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010

U.S. Dist. LEXIS 106921, 2010 W: 3943699 (N.D. Oct. 5, 2010).

### V.  Appeal *In Forma Pauperis*.

"An appeal may not be taken *in forma pauperis* if the trial court certifies in

writing that it is not taken in good faith."  28 U.S.C.A. § 1915(a)(3).  A district court's

finding "that an appeal would not be in good faith because no certificate of appealability

had been issued . . . is not enough to explain why the appeal on the merits would not be in

good faith, because the standard governing the issuance of a certificate of appealability is

not the same as the standard for determining whether an appeal is in good faith. It is more

demanding . . . [T]o determine that an appeal is in good faith, a court need only find that

a reasonable person could suppose that the appeal has some merit."  *Walker v. O'Brien*,

216 F.3d 626, 631-32 (7th Cir. 2000). *See also Weaver v. Patterson*, Civ. A. No. 11-

00152-WS-N, 2012 U.S. Dist. LEXIS 92119, 2012 WL 2568218, at *7 (S.D. Ala. June

19, 2012) (Nelson, M.J.), *report and recommendation adopted*, Civ. A. No. 11-00152-

WS-N, 2012 U.S. Dist. LEXIS 92115, 2012 WL 2568093 (S.D. Ala. July 3, 2012)

(Steele, C.J.) ("An appeal may not be taken *in forma pauperis* if the trial court certifies in

writing that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); *see* Fed. R.

App. P. 24(a)(3)(A); Lee v. Clinton, 209 F.3d 1025, 1026 (7th Cir. 2000) (concluding

that 'good faith' is 'an objective concept' and that 'not taken in good faith' is 'a synonym

for frivolous'); *DeSantis v. United Techs. Corp.*, 15 F. Supp. 2d 1285, 1288-89 (M.D. Fla.

1998) (stating that good faith 'must be judged by an objective, not a subjective, standard'

and that an appellant 'demonstrates good faith when he seeks appellate review of any

issue that is not frivolous').  An appeal filed *in forma pauperis* is frivolous if 'it appears

that the Plaintiff has little to no chance of success,' meaning that the 'factual allegations are clearly baseless or that the legal theories are indisputably meritless.' *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993).").  *But see, e.g., United States v. McCray*, No. 4:07CR20-RH, 2012 U.S. Dist. LEXIS 48199, 2012 WL 1155471, at *2 (N.D. Fla. Apr. 5, 2012) ("Because the defendant has not obtained—and is not entitled to—a certificate of appealability, any appeal by the defendant will not be taken in good faith.  I certify under Federal Rule of Appellate Procedure 24(a) that any appeal will not be taken in good faith and that the defendant is not otherwise entitled to proceed *in forma pauperis* on appeal.").

In light of the above-stated reasoning, the undersigned **RECOMMENDS** the Court certify that any appeal by Mitchell in this action would be without merit and therefore not taken in good faith and, accordingly, find that Mithcell is not entitled to appeal *in forma pauperis*.

**VI.    Conclusion**

In accordance with the foregoing analysis, it is **RECOMMENDED** that Mitchell's § 2255 motion (Doc. 58) be **DENIED** and all claims (listed in Grounds One and Two of the petition (Doc. 58 at 4-5)) be **DISMISSED** with prejudice, with the exception of his claim directed at the Bureau of Prisons (listed as Ground Three of the petition(Doc. 58 at 7)) which shall be **DISMISSED** without prejudice.  Should that recommendation be adopted, it is further **RECOMMENDED** that Mitchell be found not entitled either to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

**VII.     Notice of Right to File Objections**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c) (effective Aug. 1, 2015).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this the 8th day of January, 2016.


/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**